CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 16 2016

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| ABDUL HAMZA WALI MUHAMMAD, | ) | CASE NO. 7:15CV00541 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| EARL R. BARKSDALE, ET AL., | ) | **By: Glen E. Conrad** |
| | ) | **Chief United States District Judge** |
| Defendant(s). | ) | |

Abdul Hamza Wali Muhammad, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials at Red Onion State Prison have violated his constitutional rights in various respects. Liberally construed, his rambling complaint alleges the following groups of claims: (1) in August 2007, a nurse forcibly examined plaintiff to verify that he had not tried to harm himself by inserting a pen or other foreign object into his penis, and a prison doctor provided incompetent medical care for related problems plaintiff experienced in September 2007; (2) Red Onion officials have continually classified plaintiff to segregated confinement in retaliation for his past lawsuits; (3) on July 23, 2015, after plaintiff refused to comply with orders to uncover his window, Sgt. Glenn Fore placed him on strip cell status for eight hours with no toilet paper or soap even after plaintiff defecated on himself; (4) on July 31, 2015, Hearing Officer Larry Mullins denied him due process during disciplinary proceedings; and (5) in 2015, Red Onion medical personnel reviewed plaintiff's medical chart instead of medically assessing his medical needs in person.

On these multiple, unrelated claims, Muhammad sues more than forty prison officials, seeking monetary damages and injunctive relief. He alleges, generally, that he is asserting all of

these claims under § 1983 and several other federal statutes,[1] and he asks the court to exercise supplemental jurisdiction to address related state law claims. Muhammad has now consented to payment of the filing fee for this action. Upon review of the record, however, the court finds that the action must be summarily dismissed, because some claims are time barred and the others are factually or legally frivolous.

## I. Misjoinder of Claims and Defendants

The present complaint is not consistent with Rules 18 and 20 of the Federal Rules of Civil Procedure, regarding joinder of claims and parties. Rule 18(a) allows a plaintiff to join either "as independent or alternative claims, as many claims as it has against an opposing party." Rule 20 allows the joinder of several parties only if the claims arose out of the same transaction or occurrence, or series thereof, and contain a question of fact or law common to all the defendants. See 6A Charles Alan Wright, et al., Federal Practice and Procedure § 1583 (3d ed. 1998) (noting that, under Rules 18(a) and 20, if the claims arise out of different transactions and do not involve all defendants, joinder should not be allowed). Under these rules, "a plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question." Green v. Denning, No. 06-3298-SAC, 2009 WL 484457, at *2 (D. Kan. Feb. 26, 2009). These procedural rules apply with equal force to pro se prisoner cases. Indeed, "[r]equiring adherence in prisoner suits to the federal rules regarding joinder of parties and

---

[1] Specifically, Muhammad cites 42 U.S.C. §§ 1981 and 1985, and 18 U.S.C. §§ 241 and 241. He has not made any attempt to explain how these provisions are relevant to his § 1983 claims, and to the extent he seeks to assert a separate cause of action under any of these provisions, he provides no supporting factual basis or argument. Muhammad also claims multiple violations of Virginia Department of Corrections ("VDOC") policies and procedures, which are not actionable under § 1983. White v. Turner, No. 7:14CV505, 2015 WL 8363084, at *3 (W.D. Va. Dec. 8, 2015) (citing Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990)). Thus, the court will only consider Muhammad's claims under § 1983. "[D]istrict courts are not required 'to conjure up questions never squarely presented to them.'" Considder v. Medicare, No. 3:09CV49, 2009 WL 9052195, at *1 (W.D. Va. Aug. 3, 2009) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985)), aff'd 373 F. App'x 341 (4th Cir. 2010).

claims prevents 'the sort of morass [a multiple claim, multiple defendant] suit produce[s].'" Id. (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)).

The court cannot allow Muhammad's complaint to proceed as it is presently constituted, because it improperly joins together multiple claims and defendants, regarding unrelated incidents in different time periods in a manner entirely inconsistent with the rules. Because the court concludes, however, that the complaint also fails to provide the factual or legal basis for any claim of constitutional significance, the court will summarily dismiss Muhammad's federal claims on that ground, pursuant to 28 U.S.C. § 1915A(b)(1). The court will also deny his motions for preliminary injunctive relief as without merit.

## II. Time-barred Claims

Muhammad alleges the following sequence of events relevant to his first group of claims. On August 13, 2007, Nurse Lisa Yates and four correctional officers, based on information they had received, told Muhammad they had come to remove a state security pen from his urethra. Muhammad assured them that he did not have a pen in his penis and that he was not suicidal or prone to harm himself. Nevertheless, the officers restrained Muhammad, naked, while Yates explored his penis with her hands and some forceps, attempting to find and extract any foreign object from his penis. Finding nothing, Yates allegedly stated, "Well, he was telling the truth. There was[ ] no pen in there, but of course we already knew that." (Compl. 4, ECF No. 1.) She threatened that the next time Muhammad could die, and officers would cover it up as an accident.

On September 21, 2007, Muhammad began to urinate blood. Dr. Happy Smith and Regina Kilgore examined him and prescribed Motrin and antibiotics. On October 9, 2007, however, Muhammad went into acute renal failure, allegedly as a result of these drugs. Officials

3

transported him to a local hospital and then to the Medical College of Virginia ("MCV") hospital for treatment. Muhammad blames the blood in his urine on Nurse Yates' exploration of his penis on August 13, 2007, and the renal failure on the medical staff's inadequate treatment.

Because no federal statute of limitations applies in § 1983 actions, such actions are governed by the state statute of limitations applicable for general personal injury cases in the state where the alleged violations occur. Owens v. Okure, 488 U.S. 235, 239-40 (1989). Virginia' s statute for general, personal injury claims, Va. Code Ann. § 8.01-243(a), requires that such claims be brought within two years from the time when the action accrues. A claim under § 1983 accrues when plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal the cause of action. Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). An inmate's § 1983 action is commenced for purposes of the statute of limitations as soon as he delivers his complaint to prison authorities for mailing. Lewis v. Richmond City Police Depot, 947 F.2d 733, 735-36 (4th Cir. 1991).

The court concludes from Muhammad's allegations that by the end of October 2007, at the latest, he knew sufficient facts about his alleged injuries, and his § 1983 claims thus accrued by that time. His two-year statutory period to file a § 1983 action about these events then expired in October 2009. Yet, Muhammad did not file his § 1983 complaint until October 2015, nearly six years after his time limit expired and eight years after the events at issue. Therefore, the court finds that he is barred by the Virginia statute of limitations from bringing suit about these 2007 events. Muhammad states that he is bringing suit now because the Prison Rape Elimination Act ("PREA") did not exist in 2007.[2] He cites no basis on which this later-enacted

---

[2] Muhammad does not assert any separate legal claim against defendants under PREA itself, nor could he do so. See, e.g., Chapman v. Willis, No. 7:12-CV-00389, 2013 WL 2322947, at *4 (W.D. Va. May 28, 2013) ("There is no basis in law for a private cause of action under § 1983 to enforce a PREA violation.").

4

federal statute had any bearing on his ability to file § 1983 claims within the two-year period after the events for which he now wishes to bring suit, and the court finds no such basis.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). The court has determined that the statute of limitations unquestionably provides an affirmative defense to Muhammad's claims about the 2007 investigation and medical treatment of which he complains. Therefore, the court will summarily dismiss these claims as frivolous, pursuant to § 1915A(b)(1). See, e.g., Nasim, 64 F.3d at 956 (finding under former version of § 1915 that court may summarily dismiss as frivolous a claim clearly barred by applicable statute of limitations).

### III. Retaliatory Segregation

In his second contention, Muhammad complains that Red Onion officials have continued to classify him to segregated confinement for over two years as of July 2, 2015 in retaliation for his past lawsuits. Although Muhammad completed the step-down program months ago to be eligible to leave segregation and had been more than nine months without a disciplinary charge, he was not moved out of segregated confinement. He contends that he remains in this status "for no reason at all except for one thing retaliation for filing these [law]suits." (Compl. 5.)

A § 1983 plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Prison officials may not retaliate against an inmate for exercising his constitutional right to access the court. Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). On the other hand, to state a § 1983 claim here, Muhammad must present more than conclusory allegations of

5

retaliation. Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). He must state facts showing that his exercise of his constitutional right was a substantial factor motivating the retaliatory action. See, e.g., Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993) (citing Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287 (1977) (requiring plaintiff to show "a causal relationship between the protected expression and the retaliatory action").

Muhammad fails to make any such factual showing to support his broad declaration that officials have based their classification decisions in any respect on his litigation efforts. Moreover, his submissions indicate that he has demonstrated belligerent behavior (covering his window and refusing to comply with orders) that would reasonably support a decision that he has not yet proven himself ready for a less restrictive security classification. Accordingly, his claims of retaliatory segregation classification have no factual basis and must be summarily dismissed without prejudice under § 1915A(b)(1) as frivolous.

### IV. Strip Cell Status

In Muhammad's third group of claims, he alleges that on July 23, 2015, he covered his cell door window, in violation of prison policy, to get an officer's attention about having been denied outside recreation. When Sgt. Glenn A. Fore threatened to spray Muhammad with mace if he did not remove his towel from the window, Muhammad told the officers that his protest was peaceful and reminded them of new restrictions on the use of mace. Instead of macing Muhammad, Fore placed him on strip cell status for covering his window. Fore allegedly stripped off Muhammad's clothes roughly, leaving him in a bare cell, clad in his boxer shorts, with no toilet paper, soap, or other property items in his cell. Around lunchtime, Muhammad's chronic bowel issues caused him to have diarrhea all over himself. When Officers B. McCowan and J. Maloney served the lunch meals, they refused Muhammad's requests for soap and toilet

paper with which to clean himself and offered him a suicide watch meal on a rubber tray. Muhammad complained that he was not on suicide watch and was entitled to his Common Fare diet and eating utensils. The officers documented that he had refused his lunch. Officer C. Taylor later served Muhammad with a disciplinary infraction for covering his window and wrote that Muhammad could not sign the charge because he was on strip cell. McCowan, Maloney, and Taylor all told Fore that their actions were violating Muhammad's rights. When Muhammad threatened to sue the officers, Fore reminded him that he had lost his prior lawsuits in federal court. At 5:40 p.m., officers released Muhammad from ambulatory restraints, although he complains about some delay in returning his property items.

The Eighth Amendment protects prisoners from cruel and unusual living conditions, but "restrictive and even harsh" conditions that do not inflict harm "are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A claim of unconstitutional conditions requires a two-part showing: that the prison official acted with deliberate indifference (subjective component) to a substantial risk of harm (objective component). Hudson v. McMillian, 503 U.S. 1, 5 (1992). To prove deliberate indifference, the inmate must show that the official was aware that a substantial risk of harm existed, that he actually drew that inference and disregarded the risk by failing to take "reasonable measures" to alleviate it. Farmer v. Brennan, 511 U.S. 825, 835-37(1994). An alleged harm satisfies the objective component only if it offends "contemporary standards of decency." Hudson, 503 U.S. at 8. Normally, the inmate must provide "evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir.1995) (internal quotations and citations omitted).

7

Muhammad's allegations about strip cell status on July 23, 2015, simply do not give rise to a claim of constitutional dimensions. Muhammad does not allege that the temporary deprivation of his outer clothing and personal property (including toilet paper and soap) and missing his lunch meal caused him any serious mental or physical harm whatsoever. In fact, Muhammad does not allege that he had no access to a toilet in which to relieve himself or that he was without any water to wash himself. Furthermore, this court has held that prison officials do not violate contemporary standards of decency by imposing such strip cell conditions on an inmate as a control mechanism, after his undisputed violation of prison security regulations.[3] See, e.g., Holley v. Johnson, 7:08CV00629, 2010 WL 2640328, at *11-13 (W.D. Va. June 30, 2010) ("In response to an inmate's admittedly disruptive misconduct, a temporary limitation of an inmate's access to hygiene products, bedding, eating utensils, and freedom of movement, which causes the inmate no physical injury other than temporary discomfort and embarrassment, simply cannot qualify" as violative of contemporary standards of decency). For these reasons, the court is satisfied that the restraint circumstances of which Muhammad complains do not provide a factual basis for an Eighth Amendment violation and will dismiss these claims without prejudice under § 1915A(b)(1) as frivolous.

## V. Disciplinary Hearing

In his fourth contention, Muhammad alleges that on July 31, 2015, Officer Mullins came to his cell to conduct a disciplinary hearing on the charge that Muhammad tampered with a security device by covering his cell window on July 23, 2015. At the hearing, Reporting Officer Stallard testified that he did not know what item Muhammad had used to cover his window, but that Stallard could not see into the cell, and when he ordered Muhammad to clear his window,

---

[3] The court notes that Muhammad's indignation at officials' alleged refusal to provide him with recreation as scheduled does not excuse his admitted flouting of prison rules.

8

the inmate did not comply. On the previously prepared disciplinary report, however, Stallard had written merely that Muhammad had covered his window. Despite this factual discrepancy, Mullins found Muhammad guilty of the offense based on Stallard's statement and refused to consider Muhammad's complaint that officers had failed to return his personal property items to him after his release from strip cell status.

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir.1991).

Muhammad does not allege facts showing that the penalty imposed for his disciplinary infraction presented any atypical or significant hardship for him, in light of the restrictive conditions of confinement that already confronted him at Red Onion. Therefore, he fails to demonstrate that the penalty implicated any federally protected liberty interest so as to entitle him to federal due process protections.

Even assuming that Muhammad could show that he had a protected liberty interest at stake, however, he has not alleged facts demonstrating that he was deprived of the required

procedural protections. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). When an inmate challenges the sufficiency of the evidence underlying his disciplinary conviction, the requirements of due process are met when the finding of the hearing officer is "supported by some evidence in the record." Superintendent Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 454 (1985).

Muhammad's complaint here is that the hearing officer did not consider all the relevant evidence in reaching his decision of guilt. This argument has no factual support. The allegedly omitted evidence did not contradict the hearing officer's statement about Muhammad's behavior—covering his window and refusing to comply with orders to uncover it. It is undisputed that this behavior met the definition of the charge. Because the hearing officer thus had some evidence in the record supporting a finding of guilt, the proceedings complied with the federal due process evidentiary standard under Hill. Therefore, the court will summarily dismiss this claim under § 1915A(b)(1) as frivolous.

### VI. Medical Issues

In his fifth group of claims, Muhammad alleges that Red Onion officials are not honoring a special diet order written for him at another prison in March 2015, ordering that he receive a diet without dairy products. He admits, however, that later that year, the VDOC's head physician emailed all institutions to discontinue nondairy diets for all inmates except those with dairy allergies. Inmates like Muhammad, who claim to suffer from lactose intolerance, are merely advised to avoid foods that cause them digestive discomfort. Based on this directive, Red Onion officials will not honor the special diet order from March 2015 or refer Muhammad to see a physician about a new diet order.

10

Muhammad also complains that medical staff members merely refer him for chart review of other medical complaints instead of referring him to see the doctor. Dr. Happy Smith has allegedly written medical notes indicating that security personnel should use flexicuffs on Muhammad so he can wear his wrist brace at all times. Dr. Smith has not written a medical pass on this issue, however, so Muhammad is often cuffed without his wrist brace. Medical staff members have advised Muhammad that after review of his chart, the doctor does not believe a medical pass is necessary. Muhammad also complains that his left knee brace was not reissued to him on April 21, 2015, apparently based on review of his chart. Muhammad believes he should be examined by the doctor to assess his medical need for a cuffing pass, for a knee X-ray, and for possible reissuance of the knee brace.

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). A prison official is "deliberately indifferent" if he or she "knows of and disregards an excessive risk to inmate health or safety" and responds unreasonably to the risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994). On the other hand, a claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Questions of medical judgment are not subject to judicial review under § 1983. Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975). Medical malpractice does not state a federal claim, Estelle, 429 U.S. at 105-106, nor does mere negligence in diagnosis. Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986). See also Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977) (finding that in constitutional claim regarding course of treatment for inmate's medical needs, "the essential test is one of medical necessity and not simply that which may be considered merely desirable"); Shakka v. Smith, 71

11

F.3d 162, 167 (4th Cir.1995) (finding that nonmedical personnel were entitled to rely on professional judgment of prison's medical staff regarding appropriate course of care for inmate's medical needs).

Under these principles, Muhammad's allegations do not provide a factual basis for any claim actionable under § 1983. Muhammad's allegations indicate that medical professionals at Red Onion are monitoring his conditions and have chosen to refer him for chart review instead of a physician visit on the issues he raises here. Prison security officers and administrators can rightfully rely on these professionals' decisions about the proper course of treatment for Muhammad's medical conditions. At the most, Muhammad presents his disagreement with the medical staff members' evaluations and decisions regarding his medical complaints. Such mere disagreements between the medical staff and the patient cannot support a finding of deliberate indifference so as to state a constitutional claim here. Thus, Muhammad's allegations present no factual basis for a § 1983 claim regarding his medical treatment, and accordingly, the court will summarily dismiss these claims without prejudice under § 1915A(b)(1) as frivolous.

### VII. Motions for Interlocutory Injunctive Relief

The party seeking a preliminary injunction must make a clear showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Such interlocutory injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 22. Muhammad has two pending motions for interlocutory injunctive relief in this case.

12

The first such motion (ECF No. 3) is based on the allegations of the complaint itself. For the reasons already stated, Muhammad has failed to demonstrate any likelihood of success on the merits of the claims in the complaint. Therefore, the court finds no basis for the interlocutory injunctive relief he seeks, and will deny the motion.

In the second motion for interlocutory injunctive relief (ECF No. 12), Muhammad alleges that four Red Onion officers (Walter Davis, Lt. Anthony, Chris Gilbert, and Travis Large) have made verbal threats to harm him, related to his pending lawsuits. For example, he alleges that Davis said officers would give gang member inmates favors in exchange for beating Muhammad because of his lawsuits. Muhammad asserts that the threats prove he faces potential harm if he remains at Red Onion.

The court cannot agree that his allegations warrant the extraordinary relief he seeks. Even if Muhammad could prove that the officers made the alleged threats, the court does not find that such threats alone state any actionable claim for relief, or that threats alone provide sufficient evidence that Muhammad faces irreparable harm in the absence of interlocutory relief.[4] Moreover, it is clear that Muhammad did not have time to exhaust administrative remedies as to any such claims before he filed the motion. Until he has done so, he has not given prison officials an opportunity to resolve the situation and, as such, has not established that he faces irreparable harm without the requested court intervention. Finally, the officers mentioned in this motion are not defendants to this case, and Muhammad has not moved to amend to add them as parties or to assert particular claims for relief against them. For these reasons, the court concludes that Muhammad has not demonstrated grounds for interlocutory relief and will deny the motion.

---

[4] See, e.g., Henslee v. Lewis, 153 F. App'x 179, 179 (4th Cir. 2005) (finding that allegations of verbal abuse and harassment by guards, without more, do not state any constitutional claim) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)).

## VIII. Conclusion

For the reasons stated, the court will summarily dismiss all of Muhammad's § 1983 claims without prejudice, pursuant to § 1915A(b)(1), as legally or factually frivolous. In light of this disposition of the federal claims, the court will also decline to exercise supplemental jurisdiction over Muhammad's related claims under state law and will summarily dismiss all such claims without prejudice. Finally, the court will deny Muhammad's requests for preliminary injunctive relief as without merit. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 16th day of February, 2016.

_____
Chief United States District Judge

14